UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MAXMED HEALTHCARE, INC., | § | No. SA:14–CV–988–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| SYLVIA MATHEWS BURWELL, | § | |
| Secretary, UNITED STATES | § | |
| DEPARTMENT OF HEALTH AND | § | |
| HUMAN SERVICES, | § | |
| | § | |
| Defendant. | § | |

ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

Before the Court is a Motion for Preliminary Injunction filed by

Plaintiff MaxMed Healthcare, Inc. ("Plaintiff") (Dkt. # 7).  On March 23, 2015, the

Court heard oral argument on the Motion.  Joanna A. Hojdus, Esq., appeared at the

hearing on behalf of Plaintiff; Mary F. Kruger, Esq., appeared at the hearing on

behalf of Defendant Sylvia Mathews Burwell, Secretary, United States Department

of Health and Human Services ("Defendant" or "HHS").  After careful

consideration of the memoranda in support of and in opposition to the motion, and

in light of the parties' arguments at the hearing, the Court, for the reasons that

follow, **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Preliminary

Injunction.

1

<u>BACKGROUND</u>

The present action is an appeal from the final administrative decision of the Departmental Appeals Board Medicare Appeals Council ("MAC"), which was issued on September 18, 2014. ("Compl.," Dkt. # 1 at 1.) Plaintiff is a state-licensed and Medicare-certified home health care provider located in San Antonio, Texas. (<u>Id.</u> at 2.)

On July 11, 2011, Medicare Administrative Contractor Palmetto GBA, L.L.C. ("Palmetto") notified Plaintiff of a $773,967.00 Medicare overpayment based upon a post-pay investigation and statistical sampling conducted by Health Integrity in 2010. (<u>Id.</u> at 3–4.) Health Integrity reviewed 40 claims, and denied payment as to 39 of those claims. (<u>Id.</u> at 4.) Plaintiff appealed Health Integrity's determination as to the claims and the extrapolation of overpayment to Palmetto. (<u>Id.</u>) On appeal, Palmetto confirmed Health Integrity's findings, denying payment on the 39 claims and upholding the extrapolation of overpayment. (<u>Id.</u>)

On May 1, 2012, Plaintiff appealed Palmetto's decision to the Medicare Qualified Independent Contractor ("QIC"), Maximus Federal Services, which upheld Palmetto's decision. (<u>Id.</u>) On September 26, 2012, Plaintiff appealed the QIC's decision to the Administrative Law Judge ("ALJ") at the Office of Medicare Hearings and Appeals ("OMHA"). (<u>Id.</u>) On April 24, 2014,

the ALJ issued a decision finding one claim in favor of Plaintiff, but concluding that the extrapolation methodology used by Health Integrity deviated from Medicare requirements and directed Health Integrity to correct the statistical sampling and recalculate a new overpayment extrapolation.  (Id. at 4–5.)

On June 20, 2014, Plaintiff submitted a request for MAC review of the remaining claims found unfavorable by the ALJ.  (Id. at 5.)  Shortly thereafter, the Administrative Qualified Independent Contractor ("AdQIC") requested that MAC review the ALJ's decision regarding the overpayment extrapolation.  (Id.)  On July 7, 2014, Plaintiff submitted objections to the AdQIC's referral of the ALJ decision to the MAC.  (Id. at 6.)  On September 18, 2014, the MAC issued a decision reversing the ALJ's decision in part, finding that the statistical sampling and overpayment extrapolation were valid.  (Id., Ex. 2 at 4.)

On November 7, 2014, Plaintiff filed its Complaint for Judicial Review in this Court, raising eight grounds for appeal and requesting that the Court set aside the MAC's final decision, prohibit HHS from prematurely recouping payments to reduce the alleged overpayment, and issue exemplary damages and attorney's fees and costs.  (Id. at 11–12.)

On March 17, 2015, Plaintiff filed an Application for Ex Parte Temporary Restraining Order, seeking the issuance of a temporary restraining order to enjoin Defendant from collecting the disputed overpayment by

withholding Plaintiff's Medicare payments on a monthly basis.  (Dkt. # 7 at 1.)
Plaintiff claims that the proposed recoupment plan would force Plaintiff to
terminate all 24 of its employees, make emergency transfers of 109 patients, and
close operations.  (Id.)

On the same day, this Court converted the Application for Ex Parte
Temporary Restraining Order into a Motion for Preliminary Injunction and ordered
Defendant to respond to the Motion.  (Dkt. # 8 at 1–2.)  On March 19, 2015,
Defendant filed its Response.  (Dkt. # 10.)

To date, $599,375.03 has been applied to the overpayment principal
and interest, leaving a $420,266.41 balance consisting of both principal and
interest.  (Id. at 3.)

## LEGAL STANDARD

To secure a preliminary injunction, a plaintiff must demonstrate "(1) a
substantial likelihood of success on the merits, (2) a substantial threat of
irreparable injury if the injunction is not issued, (3) that the threatened injury if the
injunction is denied outweighs any harm that will result if the injunction is granted,
and (4) that the grant of the injunction will not disserve the public interest."
Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011) (quoting Bynum v. Landreth,
566 F.3d 442, 445 (5th Cir. 2009)).  Injunctive relief is "an extraordinary and
drastic remedy"; it should only be granted when the movant has clearly carried the

4

burden of persuasion.  Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009)
(internal quotation marks omitted) (quoting Holland Am. Ins. Co. v. Succession of
Roy, 777 F.2d 992, 997 (5th Cir. 1985)).

DISCUSSION

        Plaintiff asks the Court to enjoin Defendant from withholding future
Medicare reimbursement payments to recoup the alleged outstanding Medicare
overpayments.  (Dkt. # 7 at 1–2.)  To obtain a temporary restraining order, Plaintiff
must show, among other things, that there is a substantial threat that irreparable
harm will result if the injunction is not granted.  In order to establish that there is a
substantial threat of irreparable injury, Plaintiff must show "a significant threat of
injury from the impending action, that the injury is imminent, and that money
damages would not fully repair the harm."  Humana, Inc. v. Avram A. Jacobson,
M.D., P.A., 804 F.2d 1390, 1394 (5th Cir. 1986).

        Plaintiff contends that it will suffer imminent and irreparable injury if
Defendant is not immediately enjoined from imposing the threatened recoupment
because it will be forced to terminate all 24 of its employees, make emergency
transfers of 109 patients, and shut down.  (Dkt. # 7 at 14.)  Plaintiff contends that
such a shutdown will endanger the health and safety of its 109 beneficiaries and
will prevent Plaintiff from ever repaying the overpayment.  (Id.)  Defendant
counters that Plaintiff cannot show irreparable harm because Plaintiff's debt can be

5

satisfied through an extended repayment program and because economic harm is

not the type of irreparable harm that supports injunctive relief.  (Dkt. # 10 at 8–9.)

Defendant further argues that Plaintiff's focus on patients is misplaced: because

Plaintiff does not operate a physical facility and instead provides care directly in

beneficiaries' homes, the transfer of patients means only that the patients would

receive a new home health provider and not that they would be moved or

disrupted.  (Id. at 9.)

   In the Medicare withholding context, going out of business can be

sufficient evidence of irreparable injury.[1]  See, e.g., Life Source Enters., Inc. v.

Shalala, No. SA-00-CA-902, 2000 WL 33348793, at *5–6 (W.D. Tex. Nov. 9,

2000) (citing Midwest Family Clinic, Inc. v. Shalala, 998 F. Supp. 763, 771–72

---

[1] The Court finds distinguishable the two cases that Defendant cites in support of
the proposition that Plaintiff's economic impact is not "irreparable harm" of the
type supporting relief.  In Griego v. Leavitt, No. 3:07-CV-1708-D, 2008 WL
2200052, at *11–12 (N.D. Tex. 2008), the court found the plaintiff's claims of
irreparable injury that his clinic would shut down to be unpersuasive.  Noting that
the plaintiff had not properly exhausted his claim, the court found that any
recoupment made before the administrative process had been properly exhausted
would be a "past injury" that is inapplicable to the irreparable injury consideration
for the purposes of a preliminary injunction.  Id.  In the instant case, Plaintiff has
exhausted the administrative process, rendering the reasoning set forth in Griego is
inapplicable.
   In Affiliated Professional Home Health Care Agency v. Shalala, 164
F.3d 282, 286 (5th Cir. 2009), while commenting on irreparable harm, the court
found it unreasonable to conclude that the plaintiff's patients would be deprived of
adequate home-based care if the plaintiff went out of business.  Although Plaintiff
makes this argument in its motion, impact on patients is an injury separate from the
harm of going out of business.

(E.D. Michigan 1998)).  Here, Plaintiff has proffered evidence in the form of an affidavit and a financial statement that the threatened withholding scheme would force it to shut down operations.

However, Plaintiff has failed to explain why the injury cannot be mitigated by an extended repayment plan, which is the standard remedy in these circumstances.  Indeed, Defendant presents evidence that Plaintiff has reached out to discuss reinstating an extended repayment plan and represents that negotiation of an extended repayment plan is possible.  Accordingly, the Court finds that there is no evidence of irreparable injury at this time, when the period for negotiating an extended repayment plan remains open and Defendant remains open to negotiation. Because all four elements must be present to obtain a preliminary injunction, the lack of irreparable harm is fatal to Plaintiff's claim and the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for a Preliminary Injunction.

<u>CONCLUSION</u>

For the reasons stated above, the Court hereby **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, March 23, 2015.

_____

David Alan Ezra
Senior United States District Judge